### In re GRAND JURY MATTER.

**Grand Jury No. 91–832.**

United States District Court,
E.D. Pennsylvania.

Dec. 31, 1992.

Timothy R. Rice, Asst. U.S. Atty., Philadelphia, PA, for the Government.

Creed C. Black, Jr., Harry Weiss, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for the intervenor.

RAYMOND J. BRODERICK, District Judge.

Before the Court is a motion by the intervenor in this grand jury matter to quash a subpoena duces tecum dated April 28, 1992, and for a protective order. The intervenor is a company (hereinafter referred to as the "company") that is currently being investigated by the Grand Jury for alleged violations of federal criminal statutes in connection with its handling and disposal of hazardous wastes. The subpoena was issued to a professional environmental consulting firm ("expert consultant"), and calls for production of all documents in the expert consultant's possession with respect to the company's waste handling and disposal practices from 1987 to the present.

The expert consultant partially complied with the subpoena. At the direction of the

company, however, it has withheld production of 76 documents concerning the period of October, 1990, to the present. These 76 documents, the company asserts, are protected from disclosure to the Grand Jury by the company's attorney-client privilege, the attorney work product doctrine, or both.

As stated heretofore, the company is now the subject of a federal criminal investigation by the Grand Jury of its waste handling and disposal practices. The company asserts that the 76 withheld documents were prepared in connection with proceedings initiated by the Pennsylvania Department of Environmental Resources ("PaDER") in October, 1990, for alleged violations of solid waste management laws and regulations. The company asserts the attorney-client privilege and work product doctrine as to these documents based on its contention that it hired a law firm to provide it with legal advice in connection with PaDER proceedings, which law firm, in turn, retained the expert consultant to provide the law firm with expert environmental consulting services in order for the law firm to render legal advice to the company. The company asserts that it is claiming the privilege only with respect to documentation for tasks that were done by the expert consultant during that period for the purpose of enabling the law firm to render environmental legal advice to the company.

■ The attorney-client and work product privileges are both applicable to grand jury proceedings. *In re Grand Jury Investigation (Sun Co.)*, 599 F.2d 1224, 1228, 1233 (3d Cir.1979). The Third Circuit has noted, however, that these privileges obstruct the truth-finding process and provide benefits that are "at best, indirect and speculative." Therefore, they must be "strictly confined within the narrowest possible limits consistent with the logic of [their] principles." *Id.* at 1235; *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 802-03 (3d Cir. 1979). Accordingly, it is the company which must establish the applicability of the attorney-client privilege and the work product doctrine by setting set forth with particularity its bases for asserting them.

■ The right of the public to every person's evidence is "particularly applicable to grand jury proceedings." *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). Those constitutional, common law, or statutory privileges which constitute the exceptions to that right must not, therefore, be applied in a manner which will impede the search for truth in circumstances where the policies underlying these privileges would not be served.

Guided by these general principles, this Court held an in camera hearing on November 24, 1992, on the company's motion to quash the subpoena duces tecum and for a protective order prohibiting questioning by the Grand Jury of any employees of the expert consultant as to areas claimed by the company to be privileged. Present at the hearing were the attorney for the United States, the agent of the Federal Bureau of Investigation handling this matter, and the attorneys for the company. Based on the evidence presented at the in camera hearing, and on the Court's in camera examination of the 76 documents claimed to be privileged, the Court will deny the company's motion to quash the subpoena duces tecum and further, will deny the company's motion for a protective order.

## THE ATTORNEY–CLIENT PRIVILEGE

■ As the Third Circuit recently stated, the purpose of the attorney-client privilege is to encourage full and frank communications between attorneys and their clients. *Westinghouse v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3rd Cir.1991). The privilege protects only those disclosures that are necessary to obtain informed legal advice which might not have been made absent the privilege. *Id.* at 1423-24. Accordingly, voluntary disclosure to a third party of purportedly privileged communications has long been considered inconsistent with the privilege, and it is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived. *Id.* at 1424. The Third Circuit noted, however, that the client may allow disclosure to an "agent" assisting the attorney in giving legal advice to the client without waiving the privilege. *Id.*

The burden of proving the confidentiality of the communication rests on the party asserting the privilege. *United States v. Bump*, 605 F.2d 548, 551 (10th Cir.1979). In this regard, the company has relied primarily on *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir.1961). In *Kovel*, Judge Friendly analyzed the extent to which confidential communications made by a client to an accountant were protected from disclosure to a grand jury, when the accountant was an employee of the client's counsel hired to assist counsel in rendering tax law advice. The company asserts that the expert consultant's role in this matter is analogous to that of the accountant in *Kovel*, in that the expert consultant was retained by the law firm to "translate" a bundle of facts and circumstances regarding the company's waste handling and disposal practices. The communications embodied in the 76 documents between the company and its employees and the expert consultant, and from the expert consultant to the law firm, the company asserts, were made for the sole purpose of assisting the law firm in providing environmental legal advice to the company.

In *Kovel*, however, the court cautioned as follows:

> What is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer*. If what is sought is not legal advice but only accounting service, or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.

*Id.* at 922 (emphasis original) (citations omitted).

■ Thus, when a client's ultimate goal is not legal advice, but is rather accounting, medical, or environmental advice, the privilege is inapplicable. As stated in *Kovel* at 921:

> Nothing in the policy of the privilege suggests that attorneys, simply by placing accountants, scientists or investigators on their payrolls and maintaining them in their offices, should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam.

As stated by the Second Circuit in *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037–38 (2d Cir.1984), communications between a client and an expert consultant for business purposes, as opposed to legal purposes, are not protected.

■ As to the attorney-client privilege, therefore, the issue before the Court is whether any of the 76 withheld documents were made for the purpose of providing legal advice to the company. If, however, they were made simply in the course of providing environmental services by the expert consultant to the company, they are not protected even though some of them may be documentation of communications between the expert consultant and the law firm.

Based on the testimony presented to this Court at the in camera hearing and on the Court's examination of each of the 76 documents, the Court finds that all of the documents were made solely in the course of the expert consultant's preparation of a waste management plan that would achieve regulatory compliance for the company's waste disposal practices. That is, the documents were made in the course of the expert consultant's provision of environmental services to the company, and not for the purpose of assisting the law firm in providing legal advice to the company. In the 76 documents, the Court has found nothing that could be deemed a communication that was made to obtain informed legal advice.

Further, at the in camera hearing before this Court, the United States attorney submitted a copy of the expert consultant's "project start-up sheet" dated January 10, 1991, which describes the project agreed upon in the following language:

> [Expert consultant] will assist [company] in assessing [Resource Conservation & Recovery Act] compliance at the facility and developing a compliance program including waste characteristics, waste management plans, and waste disposal procedures.

On this project start-up sheet, the company is listed as the expert consultant's client, and an employee of the company is listed as the client contact. The law firm is listed under the heading "invoice information."

Based on the testimony presented at the in camera hearing and on this Court's review of the 76 documents, the Court finds that the law firm's participation in connection with "invoice information" was limited to the payment of the expert consultant's fees from an escrow account set up for this purpose, into which money from the company was placed, and from which the expert consultant was paid. This arrangement was made at the request of the expert consultant, who had expressed concern about payment of its fees based upon prior experiences with the company. Billings from the expert consultant addressed to the law firm for payment of services show break-downs of time spent with employees of the company, or in meetings with the PaDER, or in preparation of the waste management plan. These billings, however, show no charges for any time spent in consultations or meetings with the law firm. The fact that the expert consultant may have been paid by the law firm from an escrow account, thus, does not support the company's contention that the expert consultant was the employee of the law firm. As a matter of fact, the law firm made it clear to the expert consultant that it was not liable for the expert consultant's fees.

Further, testimony presented at the in camera hearing and the Court's examination of the 76 documents establishes that the expert consultant met with, and corresponded with, the PaDER on several occasions when the law firm was not present. Documents show that the law firm was apprized only after the fact of the subjects covered.

The Court finds that the company has failed to show, in any manner, that the services it sought from the expert consultant were for purposes of informed legal advice. On the contrary, the 76 documents submitted in camera are clearly the work-product of the expert consultant prepared in the course of carrying out its contract to prepare a waste management plan that would be in accordance with Commonwealth and federal regulations. The Court finds, therefore, that the 76 withheld documents are not protected by the attorney-client privilege. To find that any one of these 76 documents was subject to the attorney-client privilege would be to thwart the truth-seeking process of the Grand Jury in a manner that is not intended within the policies underlying the privilege. *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972).

## THE WORK–PRODUCT DOCTRINE

The company asserts that many of the 76 withheld documents are also shielded from subpoena by the work-product doctrine. As stated by the Third Circuit in *Westinghouse,* 951 F.2d at 1427–28, the purpose of the work-product doctrine differs from that of the attorney-client privilege, in that the attorney-client privilege promotes the attorney-client relationship and, indirectly, the functioning of our legal system by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine is broader, and promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients. *Id.* at 1428, citing *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947); *United States v. AT & T,* 642 F.2d 1285, 1299 (D.C.Cir.1980).

Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information. *Id.* As with the attorney-client privilege, however, the work product doctrine "obstructs the search for truth and ... its benefits are, at best, indirect and speculative." It therefore must be "strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proceedings,* 604 F.2d 798, 802–03 (3rd Cir.1979).

As stated by Judge Sloviter, now Chief Judge of the Third Circuit, in *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 592 (3rd Cir.1984), the work product doctrine covers the "written materials obtained or prepared by an adversary's counsel with an eye toward litigation." It includes "interviews, statements, memoranda, correspondence, briefs,

mental impressions, [and] personal beliefs." *Id.*, quoting *Hickman v. Taylor*, 329 U.S. 495, 511, 67 U.S. 385, 394, 91 L.Ed. 451.

As the Supreme Court stated in *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975):

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

 The company asserts that the 76 withheld documents are protected by the work product doctrine, as they represent documentation of work done by the expert consultant to assist the law firm in rendering legal advice to the company, and which were held in confidence.

As stated heretofore, the Court has closely examined each the 76 documents. The Court has found no document which was intended to assist the law firm in providing legal advice to the company. The documents include memorializations of interviews with company employees with respect to waste handling procedures, as well as observations and impressions made after witnessing first-hand the procedures and company facilities, and after reviewing internal company documents detailing the procedures. It is obvious that the documentation of these activities by the expert consultant was made for the purpose of the expert consultant's preparation of a waste management plan for submission to the federal and Commonwealth authorities, and not for the purpose of assisting the law firm in providing informed legal advice.

Some of the documents contain tables compiled from the results of testing done to determine the chemical compositions and volumes of the waste streams. Others contain proposed methods to be used in neutralizing some of those chemicals and of disposing of others, including the types of drums to be used in their transportation. None of these can in any way be deemed legal opinion.

The documents also include summaries of meetings, communications, or phone conversations between the PaDER and the expert consultant, or between the company and the PaDER, none of which contain legal opinion. Even the documents which contain references to Commonwealth and federal regulations are simply lists of regulations to be addressed by the expert consultant in preparing its proposal for the PaDER.

Although the company asserts that the 76 documents are protected by the work product doctrine, this Court is unable to find anything that could be deemed legal theories or opinion of the law firm. The Court finds, therefore, that none of the 76 withheld documents are protected by the work product doctrine.

## CONCLUSION

 The Court reiterates that it finds that not one of the 76 documents is protected from disclosure to the Grand Jury on the basis of the attorney-client privilege or the work product doctrine. The fact that many of these documents have been labeled "Privileged and Confidential Attorney–Client Work Product" is indicative of an attempt to shield these documents from any criminal investigation by the authorities. Labelling them as such, however, does not render the documents privileged when they contain no communication made or work done for the purpose of providing informed legal advice.

This Court's review of each of the 76 documents makes it clear that the expert consultant inspected the company facilities and became aware of the company operations solely for the purpose of determining the environmental issues that were to be addressed in the waste management plan which it had been retained to prepare. The meetings with the PaDER officials were for the purpose of the expert consultant becoming aware of the alleged regulatory violations which had resulted in the issuance of two Notices of Violation. Even the "tasks" spe-

cifically enumerated in the contract of the expert consultant make it clear that the expert consultant was not retained to enable the law firm to formulate legal advice to the company. Instead, the "tasks" in the contract required the expert consultant to analyze the waste being produced by the company and to prepare a plan for the disposal of that waste which would be acceptable under the Commonwealth and federal regulations. The "tasks" listed in the contract also included an agreement by the expert consultant to meet with, work with, and coordinate activities with the PaDER, and to answer all PaDER questions concerning the waste management proposal which it was to prepare.

The 76 documents do contain work product—an abundance of work product. The work product, however, is not that of the law firm. Instead, it is that of the expert consultant done for the sole purpose of preparing a waste management plan for public submission to the PaDER and the federal government. It goes without saying that expert consultants in the environmental field have not been accorded either by case law or by statute privileges comparable to the attorney-client privilege and the attorney work product doctrine.

Having determined that none of the 76 withheld documents is protected by the attorney-client privilege or the work product doctrine, the Court will deny the company's motion to quash the Grand Jury subpoena dated April 28, 1992. Further, the Court will deny the company's motion for a protective order prohibiting questioning by the Grand Jury of employees of the expert consultant in connection with the 76 documents.

### ORDER

AND NOW, this 31st day of December, 1992; the intervenor in this matter having filed a motion to quash the subpoena duces tecum of the Grand Jury dated April 28, 1992; for the reasons set forth in this Court's Memorandum dated December 31, 1992;

IT IS ORDERED: the motion of the intervenor to quash the subpoena duces tecum of the Grand Jury dated April 28, 1992, is DENIED.

IT IS FURTHER ORDERED: the company's motion for a protective order prohibiting questioning by the Grand Jury of employees of the expert consultant in connection with the 76 documents which the company had asserted were privileged is DENIED.