**14**

COASTLINE TERMINALS OF
CONNECTICUT, INC.

v.

UNITED STATES STEEL CORP.,
Defendant/Third–Party
Plaintiff

v.

Northeast Waste Systems, Inc., et
al., Third–Party Defendants.

Civ. No. 3:00CV1698 (WWE).

United States District Court,
D. Connecticut.

Aug. 18, 2003.

David J. Monz, Joseph A. Rosenthal, Up-
dike, Kelly & Spellacy, P.C., New Haven, CT,
Richard M. Dighello, Jr., Scott N. Koschwitz,
Updike, Kelly & Spellacy, P.C., Hartford,
CT, for Plaintiff/ThirdParty Defendant.

Gian–Matthew Ranelli, Joseph P. Williams,
Shipman & Goodwin, Eric Lukingbeal, Rich-
ard Michael Fil, Robinson & Cole, Ann Marie
Catino, Laurie R. Steinberg, Halloran &
Sage, William O. Riiska, Lakeville, CT, Alan
G. Schwartz, Wiggin & Dana, Christopher P.
McCormack, Matthew A. Sokol, Tyler, Coo-
per & Alcorn, New Haven, CT, for ThirdPar-
ty Defendants.

Brian P. Daniels, John R. Bashaw, Bren-
ner, Saltzman & Wallman, New Haven, CT,
for Defendant.

*DISCOVERY RULING*

FITZSIMMONS, United States
Magistrate Judge.

Pending discovery issues were submitted
by letter at the request of the Court. Oral
argument was heard on June 26, 2003. After
careful consideration, the Court rules as fol-
lows.

*Site Access Agreement*

The parties agreed to add a provision to
the site access agreement to exchange labo-

ratory results for samples taken from the site. The parties stated their agreement on the record to use their best efforts to complete a walk-through in the next thirty (30) days and to make a physical collection of samples within forty-five (45) days.

The parties discussed maintaining the status quo of certain site conditions such as wood chip/filler piles and top soil until sampling occurs. Counsel for Coastline, NHT, Waste Management, Northeast Waste Management and Ronsal North, LLC will confer with their clients and USS within ten (10) days to determine if there are any objections to maintaining the current site conditions. Counsel for Coastline will inform the Court when its client plans to move the top soil and/or wood chips. Coastline will contact USS immediately if any alteration of these site conditions is occurring or is imminently planned so that USS may file an application to maintain the status quo.

*Microfiche*

USS agreed to produce the microfiche, without cost, at its offices until July 31, 2003. The parties are agreeable to discussing low cost ways to view the microfiche. The parties may contact the Court to resolve any disputes.

*USS's Letter dated June 20, 2003: Issues 1–9*

1. USS seeks specific identification of former USS employees with whom Coastline or its counsel has communicated, including the dates, form and substance of such communications. USS argues that this information is not protected by the attorney work product doctrine as claimed by Coastline. At

oral argument, Coastline agreed to file a letter brief on or before July 15, 2003. USS' response is due July 22, 2003.

2. USS seeks production of copies of all remaining allegedly privileged documents in the possession of Triton Environmental Inc., as listed on Triton's August 17, 2001 Privilege Log. Triton originally withheld 87 documents as "attorney-environmental consultant communication." Triton currently claims a privilege for only 8 documents and withdrew its objection to production of all other documents. Accordingly, within ten (10) days of this order, Triton will provide bates stamped copies of these documents, clearly identifying the documents by number as listed on the August 17, 2001 privilege log.

*Attorney–Environmental Consultant Communication*

Triton's privilege log asserts an "attorney-environmental consultant communication" privilege as to documents ## 25, 31, 37, 38, 41, 42, 52 and 86. At oral argument, counsel for Coastline also asserted a work product privilege.

Beginning in July 1996, Triton Environmental, Inc. was retained by Coastline to conduct environmental studies and testing, to develop remedial plans and to oversee remedial work on the property.[1] Triton provided no evidence suggesting that it was retained as a consultant by Coastline's law firm, Updike, Kelly and Spellacy ("UKS").

---

1. Triton was retained by Coastline in July 1996 to assist Coastline with a Environmental Site Assessment (ESA), to conduct a Limited Phase I Environmental Site Assessment of the North Yard Parcel and to prepare a brief letter report providing guidance to Coastline regarding the Department of Environmental Protection (DEP) property transfer requirements. In July 1997, Triton was retained to complete the approved Phase II Environmental Site Assessment Work Plan for the North Yard Property. The Work Plan specified the scope of work to be completed at the site and was approved by the DEP. In October 1998, Triton was retained to oversee construction by Northeast Waste Systems of a new building in the North Yard, in a manner

consistent with Coastline's obligations under the Connecticut Transfer Act. In June 2002, Triton was retained to complete an updated Phase II Environmental Site Assessment for Lot 3 ("North Yard Property"), involving the installation of shallow monitoring wells, soil borings and the collection and laboratory analysis of soil and groundwater samples followed by preparation of a Supplemental Phase II ESA report. Triton was also retained to develop a Remedial Action Plan ("RAP"), addressing the remaining soil and groundwater impacts of Lots 1 and 2. Finally, in May 2003, Triton was retained to manage and supervise the removal and off-site disposal of wood chips and other associated debris stockpiled at Coastline's North Yard property.

■ "The attorney-client privilege may cover communications made to agents of an attorney hired to assist in the rendition of legal services." *United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F.Supp. 156, 161 (E.D.N.Y.1994)(quotation marks omitted) (quoting *U.S. v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989)). In *U.S. v. Kovel*, 296 F.2d 918, 922 (2d Cir.1961), our circuit court ruled that "the attorney-client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in usable form information obtained from the client." *Phelps Dodge Refining Corp.*, 852 F.Supp. at 161 (quoting *Federal Trade Comm'n v. TRW, Inc.*, 628 F.2d 207, 212 (D.C.Cir.1980)). In *Phelps Dodge Refining Corp.*, the Court explained:

> [The consultants] were hired by defendants to formulate a remediation plan acceptable to the [New York State Department of Environmental Control] and to oversee remedial work at the Property. Their function was not to put information gained from defendants into usable form for their attorneys to render legal advice, but rather, to collect information not obtainable directly from defendants ....

852 F.Supp. at 161.

■ It is undisputed that Triton was not hired by Updike, Kelly and Spellacy lawyers specifically to assist them in rendering legal advice. Indeed, Triton was hired by Coastline in 1996 to, among other things, formulate an Environmental Site Assessment work plan and Environmental Land Use Restriction acceptable to the Connecticut DEP and in conformity with the Connecticut Transfers Act and Remediation Standard Regulations. Triton has not argued that its function was to put information gained from Coastline into usable form for UKS to render legal advice. Coastline has also clearly stated its intention to name Triton as its expert witness in this case. "Experts hired to testify are not considered representatives of the lawyer for the purpose of the privilege because their communications are subject to disclosure at trial

and, therefore, are not confidential communications." 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence ¶ 503.12[5][a] at 503–32.2 (2d Ed.2002). Because employees of Triton are outside the attorney-client privilege, documents they prepared are discoverable. *Phelps Dodge Refining Corp.*, 852 F.Supp. at 162. Triton has failed to show that the attorney-client privilege is applicable here. *See Id.* at 159 ("The burden of proving each element of the [attorney-client] privilege rests on the party claiming protection.").

### Work–Product Doctrine

At oral argument, Coastline's attorney, Joseph Rosenthal, raised a claim of work-product privilege for the first time, explaining that he was inexperienced when he prepared the privilege log in August 2001. In addition to counsel's failure to raise the work-product privilege in August 2001, and to raise the privilege in the two years since the privilege log was prepared, counsel also failed to brief the Court prior to oral argument in June 2003 on the applicable law. Nevertheless, the Court will consider the assertion of work-product privilege out of a sense of fairness to Attorney Rosenthal's client, Coastline.[2]

■ "Voluntary disclosure to a party outside the privilege destroys the attorney-client privilege because it destroys the confidentiality of the communication." *ECDC Environmental, L.C. v. New York Marine and General*, No. 96CIV.6033, 1998 WL 614478 (S.D.N.Y. June 4, 1998)(citing *In re von Bulow*, 828 F.2d 94, 102–03 (2d Cir.1987)). "Disclosure of material protected by the work-product doctrine, however, results in a waiver of the protection afforded by that doctrine only when the disclosure is to an adversary or materially increases the likelihood of disclosure to an adversary." *Id.* (citing *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234–35 (2d Cir.1993)); *In re Crazy Eddie Sec. Litig.*, 131 F.R.D. 374, 379 (E.D.N.Y.1990) ("[T]he [work-product] privilege protects information 'against opposing parties, rather than against all others outside

---

2. The Court notes that, in *Phelps Dodge Refining Corp.*, 852 F.Supp. at 162, n. 4, although the defendants abandoned the claim of work product

privilege, the *Phelps Dodge* Court considered the assertion on the record before it.

a particular confidential relationship.' ... Counsel may therefore share work product ... with those having similar interests in fully preparing litigation against a common adversary.").

The scope of the work product doctrine is set forth in Fed.R.Civ.P. 26(b)(3):

[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

"[T]he purpose of the work product rule is to protect an attorney's mental process so that the attorney can analyze and prepare for the client's case without interference from an opponent." 6 Moore's Federal Evidence, § 26.70[8] at 26–232. *See ECDC Envir., L.C. v. New York Marine and General,* No. 96CIV.6033, 1998 WL 614478, *15 (S.D.N.Y. June 4, 1998); *Occidental Chemical Corp. v. OHM Remediation Serv. Corp.,* 175 F.R.D. 431, 434–436 (W.D.N.Y.1997); *Phelps Dodge Refining Corp.,* 852 F.Supp. 156, 162 n. 4.

As the Supreme Court stated in *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975):

At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he [or she] can analyze and prepare his [or her] client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*Id.,* 422 U.S. at 238–39, 95 S.Ct. 2160 (quoted in *Occidental Chemical Corp.,* 175 F.R.D. at 434) (citation omitted).

As stated above, plaintiff has failed to establish, as an initial matter, that Triton was hired for the project to assist plaintiff's counsel in providing legal advice to Coastline, or that any of the documents was generated for that purpose. *Id.* 175 F.R.D. at 435. Coastline does not dispute that it will designate Triton as its expert witness.

It is undisputed that the documents contain information which Triton would be expected to obtain or compile in the ordinary course of its business of overseeing the performance of environmental remediation work under its contract with Coastline. *See Id.* 175 F.R.D. at 435.

"In addition, when a party takes a position in a case that places at issue the very information sought to be protected from disclosure by the work product doctrine, the protection may be waived." *Id.* (citing *Vermont Gas Systems v. United States Fidelity & Guaranty Co.,* 151 F.R.D. 268, 276 (D.Vt. 1993); *Remington Arms Co. v. Liberty Mutual Ins. Co.,* 142 F.R.D. 408, 412 (D.Del. 1992) ("at issue" doctrine stems from traditional notions of waiver)). When Coastline brought this action, it placed at issue the information contained in the Triton documents with respect to the site conditions, data and remediation efforts.

After *in camera* review, and careful consideration of the case law and Triton's role as an environmental consultant and prospective expert witness, the Court finds as follows.

*Document # 25:*

Fax May 10, 2001–to Chris Marquesi, Triton from Attorney David Monz of Updike, Kelly & Spellacy (UKS), transcript of a voice mail message from Attorney Jennifer Groves, a UKS associate, to David Monz, forwarding a transcript of a voice mail message Ms. Groves received from Al

Lundt regarding analysis of a rock sample. NOT PRIVILEGED. No client confidence disclosed. No legal opinion sought or given. Simply a transmittal of factual information to a Triton employee.

*Document # 31 Page 1 Redacted Question in Message Text:*

Fax Transmittal Sheet September 17, 1999–to Chris Marquesi, Triton from Attorney David Monz, UKS. Monz seeking factual information from Marquesi. NOT PRIVILEGED. No client confidence disclosed. No legal opinion sought or given. Simply a request for factual information by a UKS attorney to a Triton employee. Triton withdrew its objection to the handwritten information on the map on page 8.

*Document # 37:*

Memorandum dated May 9, 2000, to Martin Tristine, Coastline V.P., and Chris Marquesi, Triton, from Attorney David Monz, UKS, re: Coastline Terminals of Connecticut, 238 Fairmont Avenue Interview Protocol for Past Employees of U.S. Steel Group. The memo contains a list of specific questions that should be included in any interview of past USS employees regarding the environmental condition of the 238 Fairmont Avenue property. Arguably, this memo is work product intended as legal advice and relating to an investigation in anticipation of litigation. During *in camera* review, Attorney Rosenthal stated he did not know whether Triton interviewed any former employees of USS, or used the memo in performing its consulting services. Absent a showing that Triton did not use these interview questions in the course of its role as a consultant and/or as an expert witness, the document is discoverable.

*Document # 38:*

Fax cover sheet dated June 21, 2000, to Attorney David Monz, UKS, from Chris Marchesi, Triton, with a copy to Martin Tristine, Coastline V.P. NOT PRIVI-LEGED. No client confidence disclosed. No legal opinion sought or given. Simply a statement of factual information from a Triton employee.

*Document # 41:*

Fax cover sheet dated November 28, 2000, to Attorney David Monz, UKS, from Chris Marchesi, Triton, with a copy to Martin Tristine, Coastline V.P. NOT PRIVI-LEGED. No client confidence disclosed. No legal opinion sought or given. Simply a statement of factual information from a Triton employee.

*Document # 42:*

Fax cover sheet dated July 20, 2000, to Attorney David Monz, UKS, from Chris Marchesi, Triton. NOT PRIVILEGED. No client confidence disclosed. No legal opinion sought or given. Simply a statement of factual information from a Triton employee.

*Document # 52:*

Fax cover sheet dated August 11, 1999, to Attorney David Monz, UKS, from Chris Marchesi, Triton with a copy to Martin Tristine, Coastline V.P. It transmits a draft letter addressed to Attorney Monz, dated July 19, 1999, from John Bondos, Triton's Project Manager, and Chris Marchesi, Triton's Principal/Senior Project Manager. Triton gave Monz a draft of the letter they were sending to him so he could edit it. Attorney Rosenthal indicated that the handwritten comments and underlining on the July 19 draft belong to Attorney Monz. The final version incorporated the handwritten changes. The final version of the July 19 letter, dated September 30, 1999, was enclosed by him in correspondence to USS on October 12, 1999.[3] Monz's October 12 letter to USS seeks, among other things, an opportunity to talk in advance of the expiration of the Tolling Agreement on December 31, 1999. Coastline has already provided the final version of the letter, dated September 30, 1999.

---

3. *See* Item 1 to October 12, 1999 letter, described as "Correspondence from Triton Environmental, Inc., dated September 30, 1999, summarizing the site history and the status of the environmental site assessment."

This lawsuit was filed on September 1, 2000.

The Court finds that the attorney's handwritten comments and edits on the draft letter are work product and that the comments and edits were clearly made in anticipation of litigation and may reveal the attorney's thought process. Nevertheless, the work product doctrine "does not protect facts concerning the creation of work product, or facts contained within work product." 6 James E. Moore, Moore's Federal Practice, § 26.70[2][a] at 26–207 (3d ed.2003). Clearly, a redacted copy of the July 19 draft letter is not protected as work product.

This raises a second question, whether work product protection is waived because the editorial comments were provided to a consultant and anticipated expert witness. USS should inform Coastline whether it seeks to press for production of the draft letter with the attorney's comments, and Coastline should inform USS whether it will continue to assert a privilege. If USS seeks an unredacted copy of the July 19, letter, the parties should brief the Court on the issue within ten (10) days.

*Document # 86:*

A handwritten "Communications Log" dated 2/17/99 from "JB" (John Bondos of Triton), regarding a telephone conversation with "Marty" Tristine of Coastline about a conversation between Bondos and Attorney Monz of UKS. NOT PRIVILEGED. No client confidence disclosed. No legal opinion sought or given. Simply a record of a conversation between a Triton employee and a Coastline employee seeking Coastline's permission to release a confidential report to Attorney Monz.

3. USS requests that NHT be ordered to answer Interrogatory # 1 of USS' Second Set of Discovery Requests.

Interrogatory # 1 states:

Identify each natural and non-natural person who was at any time an employee, manager, officer, director, shareholder, attorney, environmental consultant, independent contractor, representative, agent or affiliate of both Coastline Terminals of Connecticut, Inc. ("Coastline") and also New Haven Terminal, Inc. ("NHT"), whether or not at the same time, including but not limited to each person referenced in Paragraph 2.11 of NHT's Second Amended Plan of Reorganization, and for each person state each relationship held with Coastline and NHT and the responsibilities associated therewith, the dates during which each such relationship was held, the facts you believe were known to each such person concerning the environmental condition at any time of the real property which is the subject of the instant action, and the date on which you believe such facts became known to such person.

At oral argument, USS stated that Coastline/NHT represented that they had no other information to provide beyond the information already provided. USS estimates that Coastline/NHT has produced over 2,600 documents. USS correctly argues that it is not its burden to cull through 2,600 documents to speculate about Coastline/NHT's interrogatory responses. USS is looking for information identifying which employees knew about any site contamination, what they knew, and when they knew it. USS seeks specific responses with Bates Stamp references in a sworn-to and signed interrogatory response.

The Court agrees that Coastline/NHT has not provided a complete answer to this interrogatory. Accordingly, Coastline/NHT will provide a sworn and signed interrogatory response within ten (10) days. The parties are encouraged to meet and confer to discuss any questions that may arise, and to request a telephone conference with the Court if needed.

4. Coastline will produce all documents related to the Spring 2003 sale of approximately 11 acres to Ronsal North, LLC within ten (10) days. If the documents are not produced within that time, USS will notice a custodial deposition and subpoena the documents.

5. NHT will produce property description schedules to (i) the lease between NHT and Third–Party defendant Blakeslee Arpaia Chapman, Inc., and (ii) the lease between NHT and D.P.L. Refuse Service, Inc. and Northeast Waste Systems, Inc. within ten (10) days.

6. Northeast Waste Management and Waste Management agreed to produce copies of two other leases, with proprietary information redacted, within thirty (30) days.

7. Northeast Management will provide sworn interrogatory answers within ten (10) days. USS will file a Motion for Default if no answers are filed.

8. USS withdrew its production request concerning three related workers' compensation claims arising out of a chemical fire at the site, based on Waste Management's representation that the chemical fire occurred off site.

9. *Supplemental Discovery*

USS will determine how many sites manufactured wire rope using a manufacturing process similar to that used at the New Haven site, and provide the time frame when the wire rope was manufactured, the location(s), and any other distinguishing characteristics. USS will provide this information to the Court and Coastline/NHT within ten (10) days. The Court will then consider whether to order discovery regarding any of the sites.

## CONCLUSION

The parties are encouraged to confer in good faith as questions arise in responding to this ruling. The parties may contact the Court for help as needed.

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.