Michael A. HERTZBERG, Plaintiff,

v.

Ann M. VENEMAN, United States
Department of Agriculture,
Defendant.

No. CIV.A. 01–2494PLF.

United States District Court,
District of Columbia.

July 28, 2003.

Karen Louise Manos, Howrey SAimon Arnold & White; LLP, Washington, DC, for plaintiff.

Stratton C. Strand, U.S. Attorney's Office, Washington, DC, for defendant.

*OPINION*

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. Upon consideration of the parties' arguments, declarations submitted and the applicable law, the Court grants defendant's motion and enters summary judgment for defendant on all claims, except with respect to the application of Exemption 6 withholding to six videotapes and the issue of segregability with respect to six documents.

## I. BACKGROUND

Plaintiff Michael A. Hertzberg brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, to compel the United States Department of Agriculture ("USDA") to release documents and videotapes relating to its investigation of wildfire suppression efforts undertaken in the midst of raging wildfires in and around the Bitterroot National Forest in Montana ("the Bitterroot") in August 2000. Plaintiff is an attorney who repre-

sents "Backfire 2000," a group of individuals who allege that their properties were destroyed by fires resulting from a Forest Service firing operation performed in the Bitterroot on August 6, 2000. *See* Memorandum of Points and Authorities In Support of Defendant's Motion for Summary Judgment at 2 ("Def.'s Mot."). Seeking information relating to the August 6 firing operation and the Forest Service's ensuing investigation, plaintiff filed four FOIA requests with defendant on October 12, 2000, November 7, 2000, November 19, 2000, and May 21, 2001.

In response to plaintiff's requests and appeals, defendant ultimately released 3,068 pages of documents and 11 videotapes, some in their entirety and some in redacted form. Plaintiff now seeks the information identified but not released by defendant—approximately 87 pages withheld in full, the unredacted versions of 81 pages produced in redacted form, and two withheld videotapes and the unredacted versions of four redacted videotapes. Plaintiff argues that: (1) defendant has no legal basis for its withholdings and redactions; (2) defendant waived its right to assert work product privilege by selectively releasing documents; (3) defendant should be equitably estopped from withholding information based on its promises of full disclosure to the public; and (4) the internal USDA guideline pursuant to which defendant withheld certain documents was promulgated in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553 *et seq.*, and is otherwise contrary to law. In response, defendant contends that its withholdings and redactions are fully justified under Exemptions 5 and 6 of the FOIA; the selective release of other documents requested by plaintiff does not waive the work product privilege with respect to those documents not released; equitable estoppel does not apply in these circumstances; and the guideline

challenged by plaintiff is lawful under the APA and was properly applied.

## II. DISCUSSION

### A. Summary Judgment in FOIA Cases

■■■ Under the Freedom of Information Act, an agency may withhold documents responsive to a FOIA request only if the responsive documents fall within one of nine enumerated statutory exemptions. *See* 5 U.S.C. § 552(b). The agency bears the burden of justifying the withholding, and the court reviews the agency claims of exemption *de novo. See* § 552(a)(4)(B); *see also United States Dep't of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991); *Assassination Archives and Research Center v. CIA,* 334 F.3d 55, 57 (D.C.Cir.2003); *Summers v. Dep't of Justice,* 140 F.3d 1077, 1079–80 (D.C.Cir.1998). To enable the Court to determine whether documents were properly withheld, the agency must provide a detailed description of the information withheld through the submission of a so-called "Vaughn Index," sufficiently detailed affidavits or declarations, or both. *See Oglesby v. United States Dep't of the Army,* 79 F.3d 1172, 1178 (D.C.Cir.1996); *Vaughn v. Rosen,* 484 F.2d 820, 827–28 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Furthermore, the FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Kimberlin v. Dep't of Justice,* 139 F.3d 944, 949 (D.C.Cir.1998) (quoting *Mead Data Central, Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977)). To withhold the entirety of a document, the agency must demonstrate that it cannot segregate the exempt material from the non-exempt and disclose as much as possible. *See Kimberlin v. Dep't of Justice,* 139 F.3d at 949–50.

■■■ The Court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In a FOIA case, the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.Cir.1981); *see also Vaughn v. Rosen,* 484 F.2d at 826–28. Agency affidavits or declarations must be "relatively detailed and non-conclusory . . . ." *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C.Cir.1991). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Id.* (internal citation and quotation omitted). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir.1978) (internal citation and quotation omitted).

There is no dispute in this case as to the identity of the documents and videotapes

in question, or whether the Department of Agriculture fulfilled its duty in locating the information requested by the plaintiff.[1] The Court therefore must decide whether the Department was correct in withholding documents under Exemption 5 or Exemption 6 of the FOIA.

### B. Exemption 5

■■■ Exemption 5 of the FOIA protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552. This provision applies to materials that normally are privileged in the civil discovery context, including those protected by the attorney work product privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 154, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *see also FTC v. Grolier, Inc.*, 462 U.S. 19, 26, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983) ("The test under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance."); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C.Cir.1987) (same). As with all FOIA exemptions, the burden is on the agency invoking Exemption 5 to "establish its right to withhold evidence from the public.... [C]onclusory assertions of privilege will not suffice" to carry the agency's burden. *Senate of the Commonwealth of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 585 (D.C.Cir.1987) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C.Cir.1980)).

■■■ As incorporated into Exemption 5, the attorney work product doctrine is intended to preserve a zone of privacy in which lawyers can prepare and develop legal theories and strategy with an eye toward litigation free from unnecessary intrusion by an adversary. *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947). It protects from disclosure any materials prepared by or for a party or its attorney or by or for a party's representative in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3). The protected materials may be either deliberative or factual in nature—for the former, sometimes called opinion work product, there is special protection, nearly absolute privilege, in order to protect an attorney's mental processes and impressions from discovery, while for fact work product there is a qualified privilege which can be overcome only upon a showing of special need for the materials and undue hardship. *See* Fed. R. Civ. P. 26(b)(3); *Upjohn Co. v. United States*, 449 U.S. 383, 400–03, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Hickman v. Taylor*, 329 U.S. at 512–13, 67 S.Ct. 385; *United States v. Adlman*, 134 F.3d 1194, 1197, 1204 (2d Cir.1998); *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C.Cir.1997); *Martin v. Office of Special Counsel*, 819 F.2d at 1187. While litigation need not be imminent or certain in order to satisfy the anticipation-of-litigation prong of the test, this circuit has held that "at the very least some articulable claim, likely to lead to litigation, must have arisen," such that litigation was "fairly foreseeable at the time" the materials were prepared. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d at 865.

■■■ The USDA invoked the Exemption 5 work product privilege to withhold 67 pages of documents consisting of the witness statements of 13 Forest Service employees taken after the firing operation of August 6, 2000. *See* Def.'s Mot. at 11–

---

1. Although plaintiff's complaint challenged the adequacy of defendant's search in response to his FOIA requests, plaintiff did not raise this claim in his motion for summary judgment or his opposition to defendant's motion for summary judgment. The Court therefore does not address the adequacy of defendant's search.

12. Defendant asserts that these statements were obtained as part of a Forest Service investigation specifically undertaken in anticipation of and in preparation for litigation that the Forest Service expected might be instituted in connection with the firing operation. *See id.* Plaintiff disputes this claim, arguing that defendant has failed to establish either element of the work product privilege: first, that the witness statements were created by attorneys or their agents; and, second, that the statements were prepared in anticipation of litigation. *See* Plaintiff's Memorandum of Points and Authorities In Support of His Cross–Motion for Summary Judgment and In Opposition to Defendant's Motion for Summary Judgment at 6, 8–11 ("Pl.'s Mot.").[2] For the reasons stated below, the Court finds that defendant has satisfied each requirement.

### 1. Prepared By An Attorney

 Plaintiff appears to argue that the work product privilege applies only to materials prepared by an attorney and that it "has *not* been extended to the preparatory work of non-lawyers." Pl.'s Mot. at 7 (emphasis in original). To the extent that it rests on this narrow interpretation of the work product privilege, plaintiff's objection must fail. Rule 26(b)(3) of the Federal Rules of Civil Procedure expressly provides that the attorney work product doctrine applies to materials prepared "by or for another party or by or for that other party's representative (including the other party's attorney, consultant . . . or agent)." FED. R. CIV. P. 26(b)(3). By its own terms, then, the work product privilege covers materials prepared by or for *any party or by or for its representative;* they need not be prepared by an attorney or even for an attorney. *See id.* "While the 'work product' may be, and often is, that of an attorney, the concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer." *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 603 (8th Cir.1977); *see also United States v. Nobles,* 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (In light of "the realities of litigation," it is "necessary that the [work product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.").[3]

 While it has always been clear that "documents and tangible things prepared by or for the attorney of the party from whom discovery is sought are within the qualified immunity given to work product, so long as they were prepared in anticipation of litigation or preparation for trial," 8 CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, § 2024, *su-*

---

2. Plaintiff also argues that the statements of contractor employees of the Forest Service cannot be protected by Exemption 5 because they are not "inter-agency or intra-agency memorandums or letters." 5 U.S.C. § 552(b)(5); *see* Pl.'s Mot. at 6. The Court concludes, however, that the witness statements of Forest Service contractor employees may be considered "inter-agency or intra-agency" documents for the purposes of Exemption 5 in this case. *See Dep't of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 10–11, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001); *Ryan v. Dep't of Justice,* 617 F.2d 781, 790 & n. 30 (D.C.Cir.1980).

3. As Professor Charles Alan Wright has explained, in order to come within the qualified immunity from discovery created by Rule 26(b)(3), three tests must be satisfied. The material must be: (1) documents and tangible things, (2) prepared in anticipation of litigation or for trial, and (3) by or for another party or by or for that other party's representative. *See* 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2024 at 336 (3d ed.1994); *see also* EDNA SELAN EPSTEIN, THE ATTORNEY–CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE at 483 (4th ed.2001).

*pra* at 359 (citing *United States v. Nobles,* 422 U.S. at 239, 95 S.Ct. 2160), the 1970 amendment to the Federal Rules of Civil Procedure "expressly extend[ed] protection to documents prepared by or for a representative of a party, including his agent," *regardless of whether the agent is an attorney. Id.* at 361. *See* FED. R. CIV. P. 26(b)(3), advisory committee's note (1970 Amendment) (Subdivision (b)(3) of Rule 26 as amended "reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared . . . by or for a party or any representative acting on his behalf."). Under the amended Rule, "materials prepared by *any* representative of the client are protected, regardless of whether the representative is acting for the attorney," so long as they were clearly prepared in anticipation of litigation. EPSTEIN, *supra,* at 545 (emphasis in original). *See, e.g., In re Copper Market Antitrust Litigation,* 200 F.R.D. 213, 221 (S.D.N.Y.2001) ("[D]ocuments prepared in anticipation of litigation need not be created at the request of an attorney."); *Occidental Chemical Corp. v. OHM Remediation Services Corp.,* 175 F.R.D. 431, 434 (W.D.N.Y.1997) ("[W]ork product immunity extends to documents prepared by or for a representative of a party, including his or her agent."); *Briggs & Stratton Corp. v. Concrete Sales & Services,* 174 F.R.D. 506, 508–09 (M.D.Ga. 1997) (materials need not have been prepared by attorney or attorney's agent to enjoy work product protection, so long as prepared in anticipation of litigation);

*Bank of New York v. Meridien Biao Corp.,* No. 95 Civ. 4856, 1996 WL 490710, 1996 U.S. Dist. LEXIS 12377 (S.D.N.Y. Aug. 27, 1996) (document prepared in anticipation of litigation need not have been created at behest of counsel; work product doctrine "encompasses documents prepared by [or for] the party, whether or not it is done for the party's attorney"); *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.,* 125 F.R.D. 578, 586–87 (N.D.N.Y.1989) (work product protection exists for work of consultants acting as representative of plaintiffs); *Westhemeco Ltd. v. New Hampshire Insurance Co.,* 82 F.R.D. 702, 708 (S.D.N.Y.1979) (work product doctrine protects material prepared by defendant's surveyor and investigator).[4]

 At issue here are statements of Forest Service employees taken by Forest Service investigators in the aftermath of the August 6, 2000 firing operation and after an attorney from the USDA Office of General Counsel had advised the Forest Service to conduct an investigation in preparation for litigation. *See* Def.'s Mot. at 12. In relying on the work product privilege, defendant does not claim that the statements were created or gathered directly by an attorney or even under the direct supervision of an attorney. It does assert, however, that because the Special Agent in Charge for Law Enforcement and Investigations ("LEI") (a non-attorney) and an Associate Regional Attorney with the Office of the General Counsel, USDA (an attorney), both recognized "the

4. If one wants to assure work product protection for factual or investigatory material or witness interviews, it surely is the better practice to have the agent who collects the information or conducts the investigation employed by the client's attorney rather than by the client directly because there is a stronger presumption that the work product of an agent of a lawyer retained for litigation or

potential litigation (or the agent of an in-house or government agency lawyer with litigation responsibilities) was prepared "in anticipation of litigation." *See United States v. Nobles,* 422 U.S. at 239 n. 13, 95 S.Ct. 2160; *cf. Boca Investerings Partnership v. United States,* 31 F.Supp.2d 9, 12 (D.D.C.1998). But Rule 26(b)(3) by its terms does not require such an arrangement.

strong probability of tort claims arising from the burnout operations," the Associate Regional Attorney, Mark Lodine, "suggested, and the group agreed, that an investigation should be conducted to collect evidence, which would allow the Forest Service to defend itself in the event that the Agency is sued for damages from the burnout operation." *See* Def.'s Mot., Ex. 2, Declaration of Roger Seewald, Special Agent In Charge for Law Enforcement and Investigations, USDA ("Seewald Decl.") ¶ 7; *see also* Ex. 3, Declaration of Mark Lodine, Associate Regional Attorney, USDA ("Lodine Decl.") ¶¶ 5–6; Defendant's Opposition to Plaintiff's Cross–Motion for Summary Judgment and Reply in Support of Defendant's Motion for Summary Judgment ("Def.'s Opp."), Ex. 1, Declaration of Kathleen McAllister, Deputy Regional Forester for the Northern Region, USDA ("McAllister Decl.") ¶¶ 7–9. It was further agreed that LEI should conduct the investigation and that LEI employees should collect statements from Forest Service employees, affected property owners, and others with knowledge of the burnout operation. *See* Seewald Decl. ¶¶ 8–9.

■ Plaintiff provides no evidence to refute these declarations, but contends both that the investigation was not directed or supervised by an attorney and that it was undertaken in the ordinary course of business rather than in anticipation of litigation. *See* Pl.'s Mot. at 8–11. Absent clearer evidence of attorney control over the investigation and its purpose, plaintiff argues, the work product privilege does not apply. *See id.* at 10–11. Based on the declarations of Roger Seewald, Mark Lodine and Kathleen McAllister, the failure of plaintiff to counter these declarations with any facts, the language of Rule 26(b)(3) as amended, and the case law discussed above, the Court concludes that the extent of attorney involvement in the conduct of the investigation is not crucial.

Even though the investigation was not undertaken at the direction of, or directly supervised by, an attorney and was only undertaken at his suggestion, as the declarations indicate, Rule 26(b)(3) requires no more. It is undisputed that the investigation was conducted (and the statements prepared) by Forest Service employees in the Law Enforcement and Investigations Division. *See* Seewald Decl. ¶ 9; Lodine Decl. ¶ 6; *see also* Pl.'s Mot. at 10. Such Forest Service employees are by definition "party representatives" under Rule 26(b)(3) of the Federal Rules of Civil Procedure. Their work product therefore falls within the purview of the federal work product privilege, and defendant need not demonstrate that its employees were acting at the direction of or under the supervision of an attorney—so long as the LEI investigators collected the information in anticipation of litigation. *See* FED. R. CIV. P. 26(b)(3).

2. Prepared In Anticipation of Litigation

■ The work product doctrine protects only materials prepared "in anticipation of litigation." FED. R. CIV. P. 26(b)(3). As plaintiff correctly points out, materials prepared "in the ordinary course of business or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes" are not protected. FED. R. CIV. P. 26(b), advisory committee's note (1970 Amendment). *See also United States v. Adlman*, 134 F.3d at 1202–03; *Occidental Chemical Corp. v. OHM Remediation Services Corp.*, 175 F.R.D. at 435; *Allendale Mutual Insurance v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 136–37 (N.D.Ill.1993). To qualify for work product protection, litigation need not be actual or imminent; it need only be "fairly foreseeable." *Coastal States Gas. Corp. v. Dep't of Energy*, 617 F.2d at 865. Thus, while "some articulable claim, likely to lead to litigation, must have arisen," *id.*, the

privilege "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is [yet] contemplated." *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C.Cir.1992). "[T]he 'testing question' for the work product privilege ... is whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d 881, 884 (D.C.Cir. 1998). To meet this standard, a party "must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable" in the circumstances. *Id.*[5]

■ The Court finds that the defendant has met its burden under this standard. In support of its claim that the witness statements at issue were gathered in anticipation of litigation, defendant explains that the Forest Service conducted multiple investigations after the firing operation of August 6, 2000, each with a different purpose. *See* Def.'s Mot. at 10–11; McAllister Decl. ¶¶ 4, 5, 10. Defendant states that the only material for which it invoked Exemption 5 protection was gathered through the "litigation investigation," which had as its sole purpose preparing the agency for potential claims arising from the firing operation. *See* Def.'s Mot. at 11; Def.'s Opp. at 7.[6] This explanation is supported by the declarations of three USDA employees who attest that the litigation investigation was launched in recognition of the "strong probability of tort claims arising from the burnout operation" and with the goal that defendant "would have evidence to defend itself in the event that tort suits are filed." Seewald Decl. ¶ 7; *see* Lodine Decl. ¶¶ 5–6; *see also* McAllister Decl. ¶ 11 ("[T]he purpose of collecting these statements was to gather evidence to protect the Forest Service against prospective tort claims from the firing operation."). In addition, the litigation investigation was conducted by the Forest Service's Law Enforcement and Investigations Division, while the related investigations were conducted by the Office of the Regional Forester. *See* Seewald Decl. ¶¶ 2, 4, 7–10; McAllister Decl. ¶¶ 10–13. Assignment of the litigation investigation to LEI was based at least in part on the fact that LEI "had the skills readily available" to collect evidence for use in litigation. Seewald Decl. ¶¶ 7, 8.

The conclusion that litigation was "fairly foreseeable at the time the [materials] were prepared," *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d at 865, is further supported by the contents of media reports that followed the firing operation. Several news articles cited by defendant report strong sentiments of anger among area residents and a widespread belief that the Forest Service was at fault for damage to their properties. *See* Def.'s Opp., Exs. 4, 5, 8, 9 (newspaper articles). These arti-

---

5. This formulation of the test—described as the "because of litigation" test—is to be contrasted with the "primarily to assist in litigation" test adopted by some other circuits. *See State of Maine v. United States Department of Interior*, 298 F.3d 60, 67–68 (1st Cir.2002); *United States v. Adlman*, 134 F.3d at 1198–1203.

6. As described by the defendant, there were four separate investigations that can be categorized as: (1) a preliminary investigation; (2) a burn analysis investigation; (3) an inves-

tigation in response to a congressional inquiry; and (4) a litigation investigation. *See* Def.'s Mot. at 10–11; *see also* McAllister Decl. ¶¶ 12–17. The defendant states that it has withheld from plaintiff under Exemption 5 only materials relating to the last of these investigations. *See* Def.'s Mot. at 11 ("The only documents and materials for which defendant USDA asserts Exemption 5 protection are witness statements of federal employees and contractors prepared in anticipation of litigation.").

cles were confirmed by a videotape containing narrative that was critical of the Forest Service employees conducting the operation, and officials learned that the videotape had been distributed widely among area residents. *See* Lodine Decl. ¶ 4; McAllister Decl. ¶ 8. One source reported that residents met in large groups after the firing operation and, according to one resident, "possible legal action . . . has been discussed." *See* Def.'s Opp., Ex. 4, Buddy Smith, *Investigation Continues Into Dickson Creek Backfire*, RAVALLI REPUBLIC, Aug. 28, 2000. Defendant's preliminary investigation (prior to and distinct from the litigation investigation) confirmed these reports, finding that many area residents "blamed the Forest Service for conducting a burnout operation, which they believed destroyed their homes." Lodine Decl. ¶ 3. All of this evidence supports defendant's claim that it reasonably expected to be sued in connection with the firing operation, that such belief was objectively reasonable in the circumstances, and that it gathered the witness statements in order to defend itself in litigation. *See In re Sealed Case*, 146 F.3d at 884.

Plaintiff nevertheless argues that defendant has failed to demonstrate that it reasonably anticipated litigation or that, if defendant did foresee litigation, the witness statements were not gathered with litigation as the "primary motivating purpose." *See* Pl.'s Mot. at 11. As previously noted, *see supra* at 12, the test is not whether the "primary motivating purpose" in collecting the statements was for litigation but rather whether they were collected because of the realistic prospect of litigation. Furthermore, while certainly the Court agrees that statements gathered or documents prepared in the ordinary course of business do not enjoy work product protection, *see supra* at 11–12, plaintiff offers no evidence to refute defendant's declarations that the statements were gathered as a pre-part of a litigation inves-

tigation and solely in anticipation of litigation. Rather, he rests only on his own belief that these materials were prepared "in the ordinary course of the agency's business." *See* Pl.'s Mot. at 10. Notwithstanding plaintiff's reference to the existence of "substantial countervailing evidence" that the materials were gathered in the ordinary course of business, the Court can find no support in the record for that claim. *Id.* Indeed, all the evidence is to the contrary.

Plaintiff relies heavily on the fact that he and his clients had not threatened or initiated litigation against defendant when it launched its investigation and gathered the witness statements. *See* Pl.'s Mot. at 10. But whether plaintiff had explicitly threatened or resolved to bring suit immediately after the firing operation, defendant reasonably believed that such claims would be brought, an objectively reasonable belief, *see In re Sealed Case*, 146 F.3d at 884, and reasonably decided to gather evidence based on that belief. *See* Seewald Decl. ¶¶ 5, 6, 7, 9, 10; Lodine Decl. ¶¶ 3–6; McAllister Decl. ¶¶ 9, 11. As noted above, the work product doctrine requires only a reasonable "contemplation" of litigation, not a clear certainty; the absence of a specific claim is just one factor in determining whether the work product privilege applies. *See In re Sealed Case*, 146 F.3d at 887; *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d at 865. Because plaintiff has failed to refute the credible evidence submitted by defendant that it gathered these witness statements in anticipation of litigation, the Court concludes that these documents were properly withheld pursuant to Exemption 5.

 Plaintiff also argues that even if the witness statements were collected in anticipation of litigation and even if an attorney had supervised their collection, they are not protected by Exemption 5

because, as factual work product, they would be "routinely discoverable" in litigation against the agency. Pl.'s Mot. at 17. None of the cases cited by plaintiff supports this conclusion. On the contrary, these materials would not be routinely discoverable in the context of civil litigation; rather, unlike opinion work product which is almost always protected, factual work product may sometimes be obtainable but only upon a showing of "substantial need" and "undue hardship." *See* FED. R. CIV. P. 26(b)(3); *see also FTC v. Grolier, Inc.*, 462 U.S. at 27, 103 S.Ct. 2209; *Hickman v. Taylor*, 329 U.S. at 509, 67 S.Ct. 385; *United States v. Adlman*, 134 F.3d at 1204. To overcome the qualified work product privilege, the party seeking discovery must show both (1) a substantial need for the materials, *and* (2) an inability to obtain the substantial equivalent of the information by other means without undue hardship. *See* FED. R. CIV. P. 26(b)(3); *see also* EPSTEIN, *supra* at 482–83. Plaintiff has failed to meet this burden.[7]

### 3. Waiver

■ Plaintiff next argues that even if the 67 pages of documents withheld under Exemption 5 constitute work product, defendant waived its right to assert this privilege by selectively releasing other documents created during the same investigation. *See* Pl.'s Mot. at 20. Specifically, plaintiff asserts that defendant released two investigative reports to Gregory Tilford, President of the Backfire 2000 group, and released additional "investigative materials" in response to plaintiff's FOIA requests. *See id.*; Pl.'s Mot., Ex. 3, Declaration of Gregory L. Tilford ("Tilford Decl.") ¶ 1. These disclosures effected an implied waiver as to the withheld materi-

als, plaintiff contends, because the government "cannot be allowed, after disclosing as much as [it] pleases, to withhold the remainder." *In re Sealed Case*, 676 F.2d 793, 807 (D.C.Cir.1982) (internal quotations omitted).

Because the undisputed declarations show that multiple investigations were conducted after the firing operation and that none of the materials prepared for the LEI's litigation investigation were released, the Court concludes that defendant has not waived its right to assert the work product privilege with respect to these materials. While plaintiff does not clearly identify all materials released to him or to Mr. Tilford, it appears that the documents released were the summaries of two other investigations—separate and distinct from the litigation investigation—and the agency's response to a congressional inquiry. *See* Complaint ¶ 10 (describing documents released to Mr. Tilford as "two preliminary fire investigation reports"); Def.'s Opp. at 12–13; McAllister Decl. ¶¶ 4, 9–13, 17. The doctrine of implied waiver through selective disclosure therefore does not apply for the simple reason that defendant did not disclose any portion of the withheld materials. Nor is the Court persuaded that defendant waived the privilege by making "manipulative assurances" that it would make public the findings of its investigations. *See* Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross Motion for Summary Judgment ("Pl.'s Reply") at 16–17. To the extent that this argument goes beyond the question of estoppel, addressed below, the Court finds it unavailing. There is no evidence that defendant took any actions "inconsistent with keeping the [litigation investigation] docu-

---

**7.** Of course, once suit is filed, plaintiff would be entitled promptly to receive the names, addresses and telephone numbers of all persons having discoverable information that may be used to support the claims or defenses of the Forest Service. *See* FED. R. CIV. P. 26(a)(1). He could then seek to interview them or notice their depositions.

ments secret" or otherwise protected. *Rockwell Int'l Corp. v. United States Dep't of Justice*, 235 F.3d 598, 605 (D.C.Cir. 2001). For these reasons, the Court concludes that defendant did not waive its right to assert the work product privilege.[8]

#### 4. Estoppel

Plaintiff's final challenge to defendant's withholdings under Exemption 5 rests on the doctrine of equitable estoppel.[9] Specifically, plaintiff argues that defendant should be prevented from withholding any investigative documents because of its repeated assurances to plaintiff, to his clients and to Congress that defendant was preparing a comprehensive investigative report on the events of August 6, 2000 and that "the report and investigative materials would be released to [plaintiff] and the affected community after [defendant] had made any redactions [it] deemed necessary." Pl.'s Mot., Ex. 4, Declaration of Michael A. Hertzberg ("Hertzberg Decl.") ¶ 11. Plaintiff further asserts that he and his clients reasonably relied on these assurances to delay their own investigation and to seek congressional assistance in the matter.

In response, defendant first argues that the doctrine of estoppel is legally irrelevant, since any representations made to plaintiff were merely those of a government employee without authority to bind the agency and cannot create a duty in the agency itself. *See* Def.'s Opp. at 15. Defendant also maintains that even if the doctrine of estoppel could apply, plaintiff has failed to meet the test for estoppel because he has not demonstrated the required elements of a definite statement and reasonable reliance. *See id.* at 15–17.

■ The Court rejects the proposition that the representations of a government employee can never create a duty in the employee's agency. The rule against government estoppel by virtue of employee representations appears to apply only where fulfillment of the representations would be contrary to law. *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 423–24, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (estoppel not available to require government to pay a benefit claim not otherwise permitted by law); *The Floyd Acceptances*, 74 U.S. 666, 681, 7 Wall. 666, 19 L.Ed. 169 (1868) (financial agreements by Secretary of War did not bind government because "there can be no lawful occasion" for any government department or its officers or agents to enter into such agreements); *see also ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C.Cir.1988) (estoppel claim failed where assurances by government agents were contrary to law and thus any reliance on such assurances was not "reasonable"). While claims of equitable estoppel against the government rarely succeed, *see Office of Personnel Management v. Richmond*, 496 U.S. at 423, 110 S.Ct. 2465; *ATC Petroleum, Inc. v. Sanders*, 860 F.2d at 1111, it is clear to this Court that there

---

8. Even if it were relevant to the circumstances presented here, the case on which plaintiff primarily relies would offer him no assistance with respect to his argument regarding waiver of work product. *See In re Sealed Case*, 676 F.2d at 818 ("The purposes of the work product privilege [as distinguished from the attorney-client privilege] are more complex, and they are not inconsistent with selective disclosure—even in some circumstances to an adversary."); *see also In re United Mine Workers of America Employee*

*Benefit Plans Litigation*, 159 F.R.D. 307, 310–11 (D.D.C.1994) ("The subject matter waiver doctrine applies only to attorney-client privilege claims and not to work product immunity claims.").

9. It is not clear whether plaintiff's estoppel argument applies only to the Exemption 5 withholdings or also to documents withheld under Exemption 6. The Court would reach the same conclusion in either case.

may be circumstances in which an agency may be bound by the representations of its employees to members of the public. *See Office of Personnel Management v. Richmond*, 496 U.S. at 421, 423, 110 S.Ct. 2465; *ATC Petroleum, Inc. v. Sanders*, 860 F.2d at 1111; *Grumman Ohio Corp. v. Dole*, 776 F.2d 338, 347 (D.C.Cir.1985).

 On the merits, however, the Court concludes that plaintiff's claim of estoppel must fail because he has not demonstrated the essential elements of such a claim. The doctrine of estoppel requires a showing that: (1) there was a "definite" representation to the party claiming estoppel; (2) the party relied on its adversary's conduct to his detriment; and (3) the reliance on the representation was "reasonable." *Graham v. SEC*, 222 F.3d 994, 1007 (D.C.Cir.2000) (quoting *Heckler v. Community Health Servs.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)). In addition, this circuit has recognized that application of equitable estoppel to the government "must be rigid and sparing. The case for estoppel against the government must be compelling"; it requires proof of both the traditional elements of the doctrine as well as "a showing of an injustice ... and lack of undue damage to the public interest." *ATC Petroleum, Inc. v. Sanders*, 860 F.2d at 1111 (quoting *Int'l Org. of Masters, Mates & Pilots v. Brown*, 698 F.2d 536, 551 (D.C.Cir.1983) (internal quotation marks omitted)). With respect to the representations of agency employees, this standard has been interpreted to require that "government agents engage—by commission or omission—in misrepresentation or concealment, or, at least, behave in ways that have or will cause an egregiously unfair result." *Grumman Ohio Corp. v. Dole*, 776 F.2d at 347 (quoting *General Accounting Office v. General Accounting Office Personnel Appeals Board*, 698 F.2d 516, 526 n. 57 (D.C.Cir. 1983)).

The Court concludes that plaintiff has failed to make out a case for estoppel because he has not demonstrated that he has detrimentally relied on defendant's representations or that an "injustice" will result if defendant is not estopped from withholding these materials. As evidence of his detrimental reliance on defendant's representations, plaintiff alleges that he and his clients "did not pursue earlier resolution of Defendant's many failures to release requested records or the inordinate delays in responding to our FOIA requests. We also did not pursue, as aggressively as possible, cooperation from my client's legislative representatives or initiation of a Congressional investigation ... [and] did not aggressively pursue contact with Forest Service personnel identified in released records." Hertzberg Decl. ¶ 26.

While the alleged misrepresentations, if true, certainly put plaintiff at some disadvantage, plaintiff's decisions not to pursue relief "earlier" or "as aggressively as possible" do not present an "egregiously unfair result" or show that he detrimentally relied on the government's representations. *Grumman Ohio Corp. v. Dole*, 776 F.2d at 347. As defendant notes, plaintiff is a partner in a large law firm with sufficient resources to conduct an independent investigation at any time and to enforce plaintiff's and his clients' asserted rights under the FOIA or the Federal Tort Claims Act, as indeed plaintiff has done. *See* Def.'s Opp. at 17; Plaintiff's Notice of Filing of Administrative Tort Claims With the USDA Forest Service, July 19, 2002. While plaintiff argues that "[a] comprehensive independent investigation into the August 6, 2000 incident is not and has not been possible because the Forest Service controls almost all of the relevant personnel, documents, and other materials," Hertzberg Decl. ¶ 28, this statement only confirms the lack of plaintiff's serious inju-

ry justifying estoppel. If an independent investigation would have been impossible at any time, then plaintiff's delay based on defendant's representations is of no consequence. Plaintiff's case for estoppel against the government is not "compelling," and no injustice will result from declining to invoke equitable estoppel in this case.

### C. Exemption 6

Exemption 6 of the FOIA permits the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Under this provision, the threshold question is whether the requested information is contained in personnel, medical or "similar" files. *See United States Dep't of State v. Washington Post Co.,* 456 U.S. 595, 600, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) ("[T]he phrase 'similar files' was to have a broad, rather than a narrow meaning."); *see also Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 32 (D.C.Cir.2002); *Billington v. United States Dep't of Justice,* 233 F.3d 581, 586 (D.C.Cir.2000); *Ripskis v. Dep't of Housing and Urban Development,* 746 F.2d 1, 3 (D.C.Cir.1984). If the information sought is contained in such files, the Court must assess "whether the information is of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion." *Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d at 32 (citing *United States Dep't of State v. Washington Post Co.,* 456 U.S. at 598, 102 S.Ct. 1957; *New York Times Co. v. NASA,* 920 F.2d 1002, 1004 (D.C.Cir.1990) (*en banc* )).

To determine what constitutes a "clearly unwarranted privacy invasion," the Court must balance the individual's interest in privacy against the public interest in disclosure, in furtherance of the FOIA's "basic policy of opening agency action to the light of public scrutiny." *See Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d at 32 (quoting *United States Dep't of State v. Ray,* 502 U.S. at 175, 112 S.Ct. 541 (internal quotation marks omitted)). The public interest question is whether disclosure would "contribute significantly to public understanding of the operations or activities of government." *United States Dep't of Defense v. Fed. Labor Relations Authority,* 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994) (quoting *United States Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)). Throughout this analysis, the burden remains on the government to justify any withholdings, since "under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere under the Act." *Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d at 32 (quoting *Washington Post Co. v. United States Dep't of Health and Human Servs.,* 690 F.2d 252, 261 (D.C.Cir.1982)). *See also Ripskis v. Dep't of Housing and Urban Development,* 746 F.2d at 3 ("[T]he 'clearly unwarranted' language of Exemption 6 weighs the scales in favor of disclosure.").

Defendant relies on Exemption 6 with respect to three categories of records: (1) the unredacted versions of 81 pages consisting of witness statements of 18 private citizens and local officials, from which all names and other identifying details have been redacted; (2) 20 pages of forms withheld in full, the contents of which are limited to the names and other personal data of Bitterroot area residents with a box checked for each to denote whether the individual had chosen to evacuate in response to the Bitterroot wildfires; and (3) six videotapes taken by area residents before, during or immediately after the fires of August 6, 2000, four of which have

been released to plaintiff in redacted form and two of which have been withheld in full. *See* Pl.'s Reply at 18; Defendant's Notice of Additional Release of Videotapes and Supplement to Defendant's Motion for Summary Judgment at 1 ("Def.'s Suppl.").[10] Plaintiff objects to these redactions and withholdings on the ground that defendant has failed to demonstrate a substantial privacy interest that outweighs the public interest in disclosure and thus has failed to show a "clearly unwarranted invasion of personal privacy" under Exemption 6.[11]

### 1. Information Redacted From Witness Statements

■ In support of the redactions of names and other identifying information from witness statements, defendant asserts that the individuals who gave statements or were mentioned in the statements have a privacy interest in their names and other personal identifying information. *See* Def.'s Mot., Ex. 5, Declaration of Rita M. Morgan ("Morgan Decl.") ¶¶ 174–80. Defendant further argues that there exists no countervailing public interest in disclosure, since the identity of these individuals is not probative of Forest Service performance of its official functions. *See, e.g.*, Morgan Decl. ¶ 21. Accordingly, defendant contends that the Exemption 6 balancing test resolves in favor of withholding all names, addresses and other

personal identifiers contained in the witness statements. *See id.* ¶¶ 20–22.

In support of disclosure, plaintiff claims that defendant has misapplied the balancing test in two ways. First, plaintiff suggests that defendant has failed to identify a "substantial" privacy interest in the information, as required by Exemption 6, in that the withheld information is merely "incidental personal information" about which the individuals could have had no reasonable expectation of privacy. Pl.'s Mot. at 25. Second, plaintiff argues that defendant has failed to recognize the strong public interest that weighs in favor of disclosure. Specifically, plaintiff asserts that disclosure of these names and other identifying information will serve the public interest because it "will enhance Plaintiff's and his clients' ability to conduct their own investigation of the firing operations, and, therefore, will help shed light on the agency's performance of its statutory duties." Pl.'s Mot. at 26.

■ The interest of an individual in avoiding the unlimited disclosure of his or her name and home address "is not enough to satisfy the requirements of Exemption 6; if it were, no list of names and home addresses would ever be released under the FOIA and, of course, that is not the state of the law." *Washington Post Co. v. United States Dep't of Agriculture*, 943 F.Supp. 31, 35 (D.D.C.1996) (citing

**10.** While defendant initially withheld nine videotapes in full, it later released one of the tapes in full and released four additional tapes in redacted form. *See* Def.'s Suppl. at 1. In addition, it later discovered that two of the original nine tapes withheld were duplicates of portions of other tapes. *See id.* at 3. Accordingly, only the four redacted tapes and two withheld tapes remain in issue. *See id.*

**11.** Plaintiff argues that the videotapes are not "similar files" because they do not pertain to a specific individual and involve only information relating to the land and property dam-

aged by fires, which are "physical things" not properly the subject of the "similar files" language of Exemption 6. *See* Pl.'s Mot. at 23–24. These videotapes contain identifiable audio and video images of individual residents. *See* Def.'s Mot., Ex. 5, Declaration of Rita M. Morgan ("Morgan Decl.") ¶¶ 174–80. The Court concludes that under the relevant case law the video tapes are "similar files" under Exemption 6. *See New York Times Co. v. NASA*, 920 F.2d at 1004–05 (FOIA makes no distinction between information "in lexical and non-lexical form").

*United States Dep't of State v. Ray*, 502 U.S. at 175–76 & n. 12, 112 S.Ct. 541). The release of names and addresses in government files "is not 'inherently and always a significant threat' to privacy," but rather "the privacy threat depends on the individual characteristics that the disclosure reveals and the consequences that are likely to ensue." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d at 36 (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 877 (D.C.Cir. 1989)). In this case, the privacy interest in such "nonintimate information about a particular individual," *United States Dep't of State v. Washington Post Co.*, 456 U.S. at 601, 102 S.Ct. 1957, like the names, addresses and telephone numbers sought here is weak—in the words of *Horner*, "de minimis." *See Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d at 877. The fact that disclosure would permit plaintiff and his clients to contact these individuals is hardly significant. As in other investigations or litigation, the persons contacted could simply decline to talk to them.[12]

This case is quite different from the situation presented in *United States Dep't of Defense v. Fed. Labor Relations Authority*, 510 U.S. at 500–01, 114 S.Ct. 1006, where the nonunion employees affirmatively decided not to reveal their home addresses to union representatives. Here, the government has made that decision for the witnesses; so far as the record shows, the individuals themselves have not sought confidentiality or anonymity, and the gov-

ernment has made no promise of confidentiality with respect to names and addresses and other identifying information. *Cf. United States Dep't of State v. Ray*, 502 U.S. at 177, 112 S.Ct. 541 (significant whether interviews conducted pursuant to assurance of confidentiality). It would be sheer speculation for this Court to assume that the individuals who were interviewed by the government about the Bitterroot fires of August 2000 have decided not to come forward and speak with plaintiff and his clients, or that disclosure would result in an influx of unsolicited mail, telephone calls and/or home visits. *See Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d at 36–37.[13]

The privacy interests of the individuals being *de minimis*, the question therefore is whether disclosure of the names and other identifying information would "contribute significantly to public understanding of the operations or activities of the government." *United States Dep't of Defense v. Fed. Labor Relations Authority*, 510 U.S. at 495, 114 S.Ct. 1006 (quoting *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. at 772–73, 109 S.Ct. 1468). Defendant found "no countervailing public interest under FOIA because information that identifies the individual residence owner does not provide insight into how [the Forest Service] performs any of its statutory duties." Morgan Decl. ¶¶ 21, 28, 35, 43, 51, 58, 66. Plaintiff challenges this conclusion, claiming that disclosure would allow plaintiff to identify eyewitnesses to the

---

12. *Blazy v. Tenet*, 979 F.Supp. 10 (D.D.C. 1997), is distinguishable. For obvious reasons, non-agency personnel have an interest in protecting the fact that their names appear in files of the Central Intelligence Agency. *See id.* at 24 (names of non-agency personnel in plaintiff's CIA file did not "shed light on the workings of the CIA, while those individuals have an interest in protecting the fact that their names appear in such files").

13. The Court agrees with defendant, however, that there *is* a significant privacy interest in social security numbers, and no legitimate purpose would be served by their release. *See Sherman v. Dep't of the Army*, 244 F.3d 357, 364–66 (5th Cir.2001); *Judicial Watch, Inc. v. Export–Import Bank*, 108 F.Supp.2d 19, 38 (D.D.C.2000). Indeed, plaintiff seems to concede this point. *See* Pl.'s Reply at 19 n. 14.

fires who could help him and his clients reconstruct what happened and to determine what role, if any, the Forest Service's firing operation of August 6, 2000 played in the fires that damaged the property of plaintiff's clients. *See* Pl.'s Reply at 18. Although disclosure of the names and other identifiers would not directly shed light on Forest Service operations, plaintiff suggests that by enabling him and his clients to contact the individuals, disclosure would "open agency action to the light of public scrutiny" and thus serve the core purposes of the FOIA. *Id.* at 19 (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)).

█ The only public interest to be considered under the FOIA is the extent to which disclosure "advances 'the citizens' right to be informed about what their government is up to.' " *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d at 34 (quoting *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. at 773, 109 S.Ct. 1468). This purpose "is not fostered by disclosure of information about private citizens ... that reveals little or nothing about an agency's own conduct." *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. at 773, 109 S.Ct. 1468. In this case, the substantive content of the witness statements already has been disclosed to plaintiff, *see* Def.'s Mot. at 18, and the Court can see no public interest in the disclosure of names, addresses and telephone numbers of the witnesses themselves. *See United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. at 773–74, 109 S.Ct. 1468; *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d at 879. To the extent that anything in the statements sheds light on agency action, plaintiff already possesses that information.

It is not clear to the Court why plaintiff is not able to conduct an independent investigation into the events of August 2000 without the requested information. Presumably, if the Forest Service was able to locate and interview witnesses then plaintiff and his clients are equally capable of doing so. In any case, disclosure is not compelled under the FOIA because the link between the request and the potential illumination of agency action is too attenuated. Plaintiff cites no case recognizing a derivative theory of public interest, and this Court does not understand the FOIA to encompass such a concept. For these reasons, the Court concludes that the names, addresses and other identifying information contained in the witness statements were properly withheld under Exemption 6.

### 2. Evacuation Forms

█ Defendant also claims Exemption 6 protection for 20 pages of documents that were withheld in full, characterized by defendant as "simple forms" that contain "no more than a box checked indicating whether or not a certain private citizen had chosen to evacuate areas affected by the Bitterroot wildfires, and the individual's personal information such as name, address, telephone number, etc." Def.'s Mot. at 19; *see also* Morgan Decl. ¶¶ 160–166. Defendant also notes that these documents "indicate the decisions of local residents to stay or evacuate from an area in the path of an oncoming wildfire. This decision, which can be a matter of life and death, is highly personal and does not illuminate any government activity." Def.'s Mot. at 19. Because defendant perceived no public interest in disclosure but a substantial privacy interest, and because the forms contain no factual information beyond the personal details protected by Exemption 6, defendant withheld these

pages in full. *See* Def.'s Mot. at 17 & n. 9; Def.'s Opp. at 22.

Plaintiff's arguments for disclosure of the evacuation forms are substantially the same as his arguments with respect to the witness statement redactions discussed above. Relying on the same theory of public interest, plaintiff suggests that "[d]isclosing the evacuation list would similarly identify individuals ... who may have witnessed the Forest Service firing operations," thus permitting plaintiff to locate and interview those people. Pl.'s Reply at 18. As it held with respect to the witness statement redactions, the Court finds no merit to this argument for disclosure. The information in the evaluation forms would itself shed no light on how the government operates and is not at all related to "opening agency action to the light of public scrutiny." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d at 32. The Court therefore concludes that the evaluation forms were properly withheld under Exemption 6.

### 3. Videotapes

 The third and final category of records for which defendant claims Exemption 6 protection is a group of six videotapes—four redacted and two withheld in full. *See* Def.'s Suppl. at 1. Defendant explains that these redactions and withholdings are justified under the Exemption 6 balancing test because the tapes "show local residents themselves, their homes, and property, ... contain audio commentary by the local residents who made the tapes, or who were shown in them ... [and] no USDA or Forest Service personnel are shown on the tapes." Def.'s Mot. at 18; *see* Morgan Decl. ¶¶ 175–78. They "contain audio and/or video that would identify [the individuals depicted]," Morgan Decl. ¶ 176, who have a substantial privacy interest in their identifies. *See id.* ¶ 177. Furthermore, defendant argues that there is no public interest

in disclosure because the tapes "were taken on different days, at different times, and from different places. The tapes do not show the activities of any government agency, but rather simply show the fires burning." Def.'s Mot. at 19; *see* Morgan Decl. ¶ 178. They are for all intents and purposes the residents' "home movies" that were voluntarily provided to the Forest Service during its investigation. *See* Def.'s Suppl. at 4.

In support of disclosure, plaintiff argues that defendant misapplied the legal standard for assessing any privacy interest and failed entirely to consider the public interest in disclosure. *See* Pl.'s Mot. at 23–24. Instead of demonstrating the necessary substantial privacy interest under Exemption 6, plaintiff asserts, defendant has established only that disclosure would allow plaintiff to identify the individuals who made or were featured in the tapes. *See id.* Likewise, plaintiff contends, in finding no public interest in disclosure, defendant overlooked the fact that "[t]aken together, the video-tapes are likely to shed substantial light on the Forest Service's firing operations, even if, as Defendant contends, 'it is difficult to ascertain whether the fires shown are from the firing operation at issue, or from the wildfires that naturally erupted in the Bitterroot.'" Pl.'s Mot. at 24 (quoting Def.'s Mot. at 19). Plaintiff thus asserts that defendant's analysis was wrong as a matter of law and that a proper balancing of factors under Exemption 6 demonstrates that the public interest in disclosure "greatly outweighs any negligible privacy interest that may be at stake." *Id.* at 24.

For the reasons already discussed, the Court agrees with plaintiff that the privacy interest of the homeowners in their names, addresses and other identifying information—such as the location of their homes— is insignificant in this case. *See Nat'l*

*Ass'n of Home Builders v. Norton*, 309 F.3d at 36 (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d at 879) ("[D]isclosure of cite specific information is not 'inherently and always a specific threat' to privacy."). So far as the record shows, the residents did not seek confidentiality when they turned over their "home movies," and the government does not contend that they were given assurances of confidentiality. The video tapes "were voluntarily provided by residents and others with no promise of confidentiality, and were presumably provided for the purpose of helping to reconstruct what happened." Pl.'s Reply at 21; *see also* Def.'s Mot. at 18–19; Morgan Decl. ¶¶ 174–76. The only question then is whether the individuals' privacy interests in their visual images somehow ups the ante. The Court thinks not.[14]

That having been said, the question is whether the government has met its burden of overcoming the presumption in favor of disclosure that, under Exemption 6, "is as strong as can be found anywhere under the Act." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d at 32. In this case, plaintiff essentially makes two arguments for disclosure. First, he ar-

gues that disclosure of the names, addresses and other identifying information concerning the homeowners who appear on the video tapes would enable him to conduct his own investigation. This argument is identical to his plea for disclosure of the names and addresses of those from whom the defendant took written statements and thus is similar to the derivative theory of public interest rejected above. It therefore must be rejected again.

With respect to the videotapes, however, plaintiff makes an additional, more substantial argument, namely, that there is substantive information on the video tapes; a review of the tapes would show "the wind and wildfire conditions at the time the backfire was lit, and the path of the various fires" and thus permit the public "to evaluate for itself how the agency responded and whether it failed to perform its official functions." Pl.'s Reply at 19. In other words, he argues that disclosure of the substance of the tapes would serve the very public interest recognized by Exemption 6 and central to the purposes of the FOIA by furthering the right of the people to know "what their government is up to." *United States Dep't of Justice v. Reporters Committee for Freedom of the*

---

14. The primary case cited by the defendant in support of this proposition—*New York Times Co. v. NASA*, 920 F.2d 1002 (D.C.Cir.1990) (*en banc*)—is readily distinguishable. That case involved the disintegration of the space shuttle Challenger 73 seconds after take off, its crash into the Atlantic Ocean and the nearly instantaneous deaths of the seven astronauts aboard. The issue was disclosure of the voice recordings of the astronauts' voices in the last seconds of their lives. NASA released transcripts but refused to release the tapes, invoking the privacy interests of the families of the deceased astronauts. *See New York Times Co. v. NASA*, 782 F.Supp. 628, 629–31 (D.D.C.1991). Both the district court and the court of appeals concluded that the privacy interests of the family members were substantial. *See New York Times Co. v. NASA*, 920 F.2d at 1006 ("One can hardly doubt that the

horror in the voices on the tape would convey additional information that applies to the astronauts in the throes of their deaths."); *New York Times Co. v. NASA*, 782 F.Supp. at 631 ("[T]he 'intimate detail' that underlies the privacy interest in this tape is the sound of the astronauts' voices. Exposure to the voice of a beloved family member immediately prior to that family member's death is what would cause the Challenger families pain. *What* the astronauts said may not implicate privacy interests . . . . But *how* the astronauts said what they did, the very sound of the astronauts' words, does constitute a privacy interest."). There the privacy interest was substantial and disclosure would constitute "a clearly unwarranted privacy invasion." *New York Times Co. v. NASA*, 920 F.2d at 1004. Here, neither the privacy interest nor the privacy invasion is substantial.

*Press*, 489 U.S. at 772–73, 109 S.Ct. 1468 (internal quotation marks omitted); *see also Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d at 33–34. While the tapes apparently contain no images of Forest Service officials engaged in their official duties, nor any "government operations in progress," *see* Def.'s Mot., Ex. 7, Letter to Michael Hertzberg from Dale Bosworth, Washington Office Chief, Forest Service, dated March 15, 2002 at 3, the Court cannot conclude solely on the basis of the letters and declarations presented that the tapes do not contain information about how the Forest Service responded to the crisis and performed its official functions. For this reason, the Court will examine the six video tapes at issue *in camera*.[15]

### D. Segregability

■ Plaintiff next challenges the sufficiency of defendant's segregability analysis. Under the FOIA, if a record contains information that is exempt from disclosure, any reasonably segregable portion of the record must be released after deletion of the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *See* 5 U.S.C. § 552(b); *Assassination Archives and Research Center v. CIA*, 334 F.3d at 57–58; *Trans–Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1027 (D.C.Cir.1999); *Kimberlin v. Dep't of Justice*, 139 F.3d at 949–50; *Mead Data Central, Inc. v. United States Dep't of the Air Force*, 566 F.2d at 260–61. To withhold the entirety of a document, the agency must demonstrate that it cannot segregate the exempt material from the non-exempt and must disclose as much as possible. *Kimberlin v. Dep't of Justice*, 139 F.3d at 949–50.

Plaintiff asserts that defendant has failed to "show with reasonable specificity" that it released all reasonably segregable portions of certain of the records at issue. *See* Pl.'s Mot. at 26–29; Pl.'s Reply at 22–24. Defendant maintains that it conducted an extensive segregability analysis and that its declarations sufficiently justify all withholdings and redactions. *See* Def.'s Reply at 22. The Court concludes that with respect to the vast majority of records withheld and redacted, the *Vaughn* index and the declarations submitted by defendant are sufficiently detailed to show that the agency performed a particularized analysis of each record and carefully considered the possibility of segregating non-exempt information from each, doing so where possible. The agency has supplied a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Schiller v. NLRB*, 964 F.2d at 1210 (quoting *King v. United States Dep't of Justice*, 830 F.2d 210, 224 (D.C.Cir.1987)) (internal quotation marks omitted).

■ With respect to six records, however, defendant's *Vaughn* index—the declaration of Rita Morgan—is not sufficiently detailed to demonstrate that segregation is not feasible. Specifically, in justifying its decision to withhold in their entirety records numbered 16 and 18 through 22, defendant's index explains the applicability of the claimed exemption only with respect to one portion of the record (the witness statement), failing to explain why remaining distinct portions of the record have been withheld. *See* Morgan Decl. ¶¶ 80, 88, 92, 96, 100, 104. Defendant's explanation is insufficient for the Court to conduct its own segregability analysis because it does not "show with reasonable specificity why the documents cannot be further segregated" and additional portions disclosed.

---

**15.** The Court will examine the two video tapes withheld in their entirety and both versions of the four video tapes released in redacted form.

*Armstrong v. Executive Office of the President,* 97 F.3d 575, 578 (D.C.Cir.1996); *see Kimberlin v. Dep't of Justice,* 139 F.3d at 950. Because defendant's explanations for these six withholdings are insufficient as a matter of law but do not necessarily indicate a failure to engage in segregability analysis, the Court will permit the government to file a supplemental affidavit on the issue of segregability. Alternatively, the defendant may submit the six documents to the Court for *in camera* review along with the videotapes.[16]

### E. Plaintiff's APA Challenges to USDA Department Regulation 2510-001

Finally, plaintiff challenges USDA Department Regulation ("DR") 2510–001, which "prescribes procedures for handling claims against the United States pursuant to the [FTCA]" and provides that "[w]hen an agency receives a claim or learns of an incident likely to result in a claim, it is responsible for ensuring that an investigation of the incident is undertaken and for the preservation of all relevant evidence. Any such investigation is conducted at the request of [the USDA Office of General Counsel], *and any report derived from such investigation is considered attorney work product.*" DR 2510–001 § 7c (emphasis added). Plaintiff challenges the regulation under the Administrative Procedure Act, 5 U.S.C. § 553 *et seq.,* arguing that it is invalid both because defendant failed to provide for notice and comment and because it is inconsistent with the law of attorney work product privilege. *See* Pl.'s Mot. at 11–16. He specifically challenges Section 7(c) of the Regulation as contrary to law because it expands the work product doctrine beyond its definition in Rule 26(b)(3) of the Federal Rules of Civil Procedure.

The Court agrees with defendant that plaintiff's first challenge under the APA must be rejected. Notice and comment were not required in this case because DR 2510–001 pertains to internal policies that do not affect substantial rights; it is not a substantive rule of general applicability but internal guidance for USDA employees. *See* Def.'s Mot. at 22–23. The Court agrees with plaintiff, however, that it is Rule 26(b)(3) of the Federal Rules of Civil Procedure and not a regulation promulgated by any Executive Branch department or agency that defines the parameters for withholding documents under Exemption 5 of the FOIA. While it is certainly legitimate to provide internal guidance for employees making the initial cut during an investigation as to what might be work product, those employees later charged with deciding what can be withheld under Exemption 5 of the FOIA must engage in the more sophisticated analysis required by that exemption and Rule 26(b)(3) of the Federal Rules of Civil Procedure. They are not free to rely on DR 2510–001 as support for a decision to withhold.

For the reasons stated herein, the Court grants summary judgment for defendant and denies summary judgment for plaintiff on all claims except the issue of segregability regarding six documents and the applicability of Exemption 6 to six videotapes. An Order consistent with this Opinion shall be issued this same day.

SO ORDERED.

### ORDER AND JUDGMENT

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that the parties' cross-motions for summary judgment are GRANT-

---

16. Plaintiff also challenges defendant's lack of adequate justification for its failure to segregate in the case of the videotapes withheld in full. *See* Pl.'s Reply at 23–24. Since the Court will review *in camera* the video tapes that have been withheld, the Court need not decide this question.

ED IN PART and DENIED IN PART; it is

FURTHER ORDERED that plaintiff's motion for summary judgment [9] is DE-NIED on all claims, except with respect to the issue of the application of Exemption 6 to the withholding of six videotapes and the issue of segregability with respect to six documents (Documents 16, 18–22); it is

FURTHER ORDERED that defendant's motion for summary judgment [8] is GRANTED on all claims, except with respect to the six videotapes and the issue of segregability on the six documents; it is

FURTHER ORDERED that on or before August 28, 2003 defendant shall submit a supplemental affidavit on the issue of segregability with respect to Documents 16 and 18–22 or, alternatively, submit the documents to the Court for *in camera* review; and it is

FURTHER ORDERED that on or before August 28, 2003 defendant shall submit the two videotapes withheld in full and the redacted and unredacted versions of the four videotapes withheld in part to the Court for *in camera* review.

SO ORDERED.